## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VISIONQUEST NATIONAL, LTD.       :
600 North Swan Road       :
Tucson, AZ 85711       :
      :     CIVIL ACTION
      :
v.       :     No.
      :
SCHOOL DISTRICT OF PHILADELPHIA       :     Jury Trial Demanded
440 North Broad Street       :
Philadelphia, Pennsylvania 19130       :

## COMPLAINT

### I.    Preliminary Statement

1.    In this matter, Plaintiff VisionQuest National, Ltd., which has for many years provided educational services to resident students of Defendant School District of Philadelphia (sometimes referred to as the "District"), seeks to recover its statutorily-mandated compensation for those services.  VisionQuest provides educational services to resident students of many school districts in the Commonwealth of Pennsylvania, including the School District of Philadelphia.  Such students are typically committed to a VisionQuest residential facility by the juvenile justice system, and VisionQuest provides such students with an education, including special education supports where needed, while such students are committed to VisionQuest facilities.  Pursuant to Pennsylvania state law, school districts such as Philadelphia's are obligated to pay, through host school districts, VisionQuest's fair compensation for the services it provides to their students.  *All* school districts in Pennsylvania *other than* the School District of Philadelphia have a history of paying for VisionQuest's services in a prompt manner.  Conversely, the School District of Philadelphia has, consistently since VisionQuest's 2012 fiscal year, and continuing through the

present, failed to timely and fully pay VisionQuest for all of the educational services VisionQuest has provided, and continues to provide, to its resident students from Philadelphia. The failure of the District to make these payments, which now total more than $1.6 million, has reached the point that it threatens the financial viability of VisionQuest and its programs.

      2.     VisionQuest and its host school districts have, for the years in question, provided detailed billing statements on multiple occasions documenting the services it has provided to specific resident students of the District. The District, in response, has interposed a litany of delaying tactics in the form of insufficient excuses for its failure to pay – the format of its billing statements, claims for a need of additional documentation – to which VisionQuest has responded by supplying the information, usually on multiple occasions. Yet, the District continues to fail to pay. Most recently, the District has developed yet another legally untenable excuse – that VisionQuest cannot charge for both regular education and special education services for District students who receive these services. This claim is entirely unsupported by the clear applicable statute – which is followed by every other Pennsylvania  school district with regard to VisionQuest – and by the District's longstanding historic position of nearly 20 years regarding the proper billing rate.  Perhaps recognizing the untenability of its position, the District, through its General Counsel, has recently acknowledged that it is required by applicable statutory authority to pay both regular education tuition charges *and* the costs of special education services provided to residents students of the District. Yet, The District has still failed to comply with applicable statutory requirements and pay *any* of the outstanding amounts, even as it states it needs new, previously unrequested, information regarding special education services.

      3.     The District's actions also plainly violate applicable Pennsylvania contract law, which

requires that the District timely and fully pay for the educational services that VisionQuest has provided its students. Moreover, the District has accepted and retained VisionQuest's services for a period of years while refusing to pay for those services. Therefore, the District is further obligated to pay VisionQuest for its services pursuant to the principles of quantum meruit and unjust enrichment.

4.      Moreover, the District's actions, whereby the District has reaped the benefit of those services provided by VisionQuest for a period of years, but has not provided just compensation for those services, constitutes an unconstitutional taking of VisionQuest's property without just compensation.      The District's actions also constitute an unconstitutional deprivation of VisionQuest's property without due process of law.

5.      The District's longstanding failure to pay has caused, and continues to cause, VisionQuest extreme financial hardship. Due to the District's violation of law, VisionQuest has been forced to lay off staff and to close programs. If the District continues to refuse to pay VisionQuest for its services as required by statute, VisionQuest will be forced to lay off additional staff and to curtail or close additional programs in Pennsylvania. This will cause direct harm to the students affected, including resident student of the School District of Philadelphia and resident students of other school districts, by depriving them of the educational services to which they are entitled under federal and state law. By its continued flouting of the law, the District has harmed, and will continue to harm, both its own resident students and other students to whom VisionQuest provides educational services.

## II.      Parties

6.      Plaintiff is an Arizona corporation with a principal place of business located at 600

3

North Swan Road, Tucson, Arizona 85711.

7.      Defendant School District of Philadelphia is located at 440 North Broad Street, Philadelphia, Philadelphia County, Pennsylvania, 19130.  The District is the recipient of several sources of federal funds and is an educational agency designated by Pennsylvania law and the Pennsylvania Department of Education for the provision of educational services to individuals residing within its boundaries; such services include those mandated under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA") as well as Pennsylvania's statutory/regulatory scheme concerning young children with disabilities.  11 P.S. § 875-101; 22 Pa. Code §§ 14.131 to 14.133; see also, e.g., 24 P.S. Chapter 13; and 22 Pa. Code Chapters 14 and 15.

## III.    Jurisdiction and Venue

8.      This Court has original jurisdiction over the dispute in this matter under 28 U.S.C. § 1331 because this case raises federal questions under 42 U.S.C. § 1983.  This Court has further jurisdiction over Plaintiffs' state law claims on the basis of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Jurisdiction is also proper in this matter pursuant to 28 U.S.C. § 1332 because the sole plaintiff is diverse from the sole defendant.  Plaintiff is an Arizona corporation with its principal place of business in Tucson, Arizona, and is therefore a citizen of Arizona pursuant to 28 U.S.C. § 1332(c).  Defendant School District of Philadelphia is a governmental entity located entirely in Philadelphia, Pennsylvania, and is therefore a citizen of Pennsylvania.  The amount in controversy exceeds $75,000.00, exclusive of interests and costs.

9.      Defendant School District of Philadelphia is the only defendant, and is located in the state of Pennsylvania, and within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.  All of the Defendant's actions complained of herein have taken place

within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

**IV.    Additional Facts Supporting Liability**

10.    VisionQuest National Ltd. operates as a national youth services organization that provides intervention services to at-risk youth and families. The company offers residential and community-based programs for young people who pose significant challenges for their families, their schools, and their communities, and for adolescents who defy parental rules, engage in risky behaviors, exhibit mental health problems, or have committed delinquent acts. Its residential programs include evidence-based interventional, education, balanced and restorative justice, and gender-specific programming. The company also offers home and community-based services, such as non-residential treatment-oriented services for youth with behavioral issues who are living at home; HomeQuest, which helps communities to reduce the need for residential placement by ensuring that a teenager complies with the strict requirements of the court while living at home and continuing in school; and functional/family therapies. It serves boys, girls, court-placed youth, young people in foster care, and older adolescents in Pennsylvania, Arizona, Delaware, Florida, Maryland, and Texas.

11.    VisionQuest at all relevant times has operated educational programs for youths in the Commonwealth of Pennsylvania within the borders of the Franklin Area School District, the Waynesboro Area School District, and the Southern Fulton School District. In addition, VisionQuest operates a residential facility in Northeast Philadelphia, for which the Chester County Intermediate Unit ("CCIU") has contractually arranged with VisionQuest to act as a billing agent.

12.    Since 2011, and, indeed, prior to that time, resident youths of the District have been

5

committed by Philadelphia County's Juvenile Court to VisionQuest's Franklin, Waynesboro, and Southern Fulton facilities, as well as VisionQuest's Northeast Philadelphia facility. In those facilities owned and operated by VisionQuest, resident youths of the District have received, in addition to residential services, educational services provided by VisionQuest. Such services, including both general education services and, where required by a student's Individualized Educational Program ("IEP"), special education services, have been provided by teachers and other staff employed by VisionQuest, and the educational services have been provided in physical facilities owned and operated by VisionQuest.

13.    Pursuant to applicable Pennsylvania law, where resident students of a school district (the "district of residence") are committed to an institution such as those operated by VisionQuest that is located within the boundaries of another school district (the "host district"), the host district determines the proper costs of services by VisionQuest and bills the district of residence for the educational services provided to the students of the district of residence. 24 P.S. §§ 13-1306, 1308. The district of residence is statutorily required to pay these bills from the host district; its recourse if it believes the bills to be incorrect is to appeal to the Pennsylvania Secretary of Education. 24 P.S. § 13-1308(a). The School District of Philadelphia has neither paid their bills nor lodged *any* appeal to the Secretary. Upon receipt of a payment from the district of residence, the host district must then pay VisionQuest, as the actual provider of the educational services, for the educational services provided to students of the district of residence. For special education students, the educational costs involve the tuition rate approved by the Pennsylvania Department of Education ("PDE") for regular education services (known as the "cost of tuition" or the "applicable tuition charge"), plus the costs of additional special education services.

6

14.     The rate for regular education services is set by PDE and applicable Pennsylvania law,

including 24 P.S. § 13-1309.

24 P.S. § 13-1309 provides:

§ 13-1309. *Cost of tuition; how fixed*

(a) The cost of tuition in such cases shall be fixed as is now provided by law for tuition costs in other cases, except in the following circumstances:

(1) Where, for the accommodation of such children, it shall be necessary to provide a separate school or to erect additional school buildings, the charge for tuition for such children may include a proportionate cost of the operating expenses, rental, and interest on any investment required to be made in erecting such new school buildings.

(2) When a child who is an inmate of an institution is a child with exceptionalities, the district in which the institution is located may charge the district of residence, and the district of residence shall pay a special education charge *in addition to the applicable tuition charge*. Such special education *charge when combined with the applicable tuition charge* shall not exceed the total net cost of the special education program provided. In the case of a child with exceptionalities who is an inmate of an institution and who is served under section 2509.1(b), the district in which the institution is located may charge the district of residence an amount that does not exceed the total cost of the special education program provided minus the amount received per child from the Commonwealth under section 2509.1(b).

(b) For students who the Secretary of Education has determined are legal residents of Pennsylvania without fixed districts of residence, the tuition herein provided for shall be paid annually by the Secretary of Education. For all other students, the tuition herein provided shall be paid by the district of residence or the institution as the case may be, within thirty (30) days of its receipt of an invoice from the district in which the institution is located.

(Emphasis added).

15.     As stated in section 13-1309(a)(2),  the district of residence must pay a special

education charge *in addition to the applicable tuition charge*" and "[s]uch special education charge

*when combined with* the applicable tuition charge shall not exceed the total net cost of the special

education program provided." (Emphasis added).  The District, however, without any support, has

asserted to VisionQuest that VisionQuest may only receive payment for the actual costs of special education services, but *not* the underlying statutory "applicable tuition charge," i.e., the charge for providing the basic regular education services to exceptional students who receive those services *in addition to* supplemental special education services. On this, and other insufficient asserted bases, the District has refused to pay VisionQuest the full amounts it owes for the fiscal years 2012 through 2014.

16.     This stated position by the District is entirely inconsistent with the clear terms of the applicable statutes. It is also inconsistent with the interpretation of the applicable statutes by PDE as set forth in a Basic Education Circular ("BEC") dated July 1, 1999. This BEC provides: "For a student residing in a children's institution who is eligible for special education services, the host school district may charge up to the total net cost of the services provided, minus any amount already received as a tuition charge. The Pennsylvania School Code, 24 P.S. Section 1309(2), allows for the host school district to charge the full cost of providing special education programs and services for all institutionalized students."

17.     In an email dated November 7, 2013, the District's Chief Financial Officer, Matthew Stanski, correctly stated the obligations of the District when he wrote the following to VisionQuest's President Mark Contento: "VisionQuest needs to show what its actual costs for special education are consistent with their calculation of the special education daily rate according to the Pennsylvania code by adding the PDE regular education daily rate for their host district and the additional special education costs *(e.g. Actual cost/Calendar days = VQ special ed rate + PDE approved Host District regular ed rate)*." (Emphasis in original). .

18.     During a November 30, 2015 conference call with representatives of PDE and

8

VisionQuest, the District's General Counsel, Michael A. Davis, Esquire, stated that the District was, in contrast to its earlier position, *in agreement* that the District is financially responsible to pay VisionQuest the regular education tuition rate plus the applicable special education costs for each special education student. Mr. Davis further stated that the District is in agreement that since the approved regular education costs are unquestionably owed for each special education student regardless of the additional special education costs due for each individual student, no apparent reason exists for the District to delay payment of these approved regular education costs for the special education students, even as the District now demands new information regarding special education costs for each student. Although Mr. Davis further stated that he would collaborate that same week with the District's Finance Department to promptly address this overdue payment issue, and VisionQuest, through counsel, has written to Mr. Davis and left messages for him regarding this issue, Mr. Davis has not responded, and has failed to take any steps to ensure that VisionQuest is *promptly* paid for the long-overdue, and undisputed, charges for VisionQuest's provision of regular education services to District resident students.

19.     VisionQuest, per the terms of Section 13-1309, has only billed the District for the approved regular education base rate *plus* its actual additional special education costs (i.e., those in addition to the regular education rate).

20.     The District also abruptly changed its position in the Summer of 2013 regarding paying for educational services provided by VisionQuest to Philadelphia resident students in the summer months of July and August, and has asserted this as an excuse to cease paying for such services as it previously paid for nearly 20 years. Prior to the start of the 2013-2014 school year, the District announced that it would no longer pay for educational programming for students during the

9

months of July and August who did not have an IEP that provided that the student would receive Extended School Year, or "ESY," services. This was a complete reversal of the District's longstanding position, where the District paid for educational services provided in July and August to students without an IEP that called for ESY services. However, the District also stated that it would also not pay for July and August educational services for years *prior to* the 2013-2014 school year, even though VisionQuest had *already* provided such services to Philadelphia resident students in accord with the District's longstanding policy *and* the District had accepted such services from VisionQuest. Moreover, VisionQuest's educational programs are year-round, and VisionQuest has never billed the District for more than 180 school days per year (the fewest number of school days allowed by statute), even where educational services were provided to students in July and August. The District's post-hoc change in position that it would not pay for services that were *already provided by VisionQuest and accepted by the District* merely because those services happened to be provided in the months of July and August is entirely indefensible, and is merely another pretext to avoid paying VisionQuest for services that it has provided to Philadelphia resident students.

21. The District has consistently failed to pay the amounts billed for the programs at issue despite multiple requests by Plaintiff.

22. For the 2012 fiscal year, the District has failed to pay $65,989.64 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Waynesboro program; has further failed to pay $186,56.11 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Franklin program; has further failed to pay $5,346.64 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Northeast Philadelphia program, for

10

which CCIU acted as VisionQuest's billing agent; and has further failed to pay $3,197.62 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Southern Fulton program.

23.     For the 2013 fiscal year, the District has failed to pay $109,156.96 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Waynesboro program; has further failed to pay $91,471.94 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Franklin program; has further failed to pay $107,403.04 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Northeast Philadelphia program, for which CCIU acted as VisionQuest's billing agent; and has further failed to pay $5,880.00 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Southern Fulton program.

24.     For the 2014 fiscal year, the District has failed to pay $122,490.03 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Waynesboro program; has further failed to pay $245,291.71 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Franklin program; has further failed to pay $201,071.60 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Northeast Philadelphia program, for which CCIU acted as VisionQuest's billing agent; and has further failed to pay $15,506.72 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Southern Fulton program.

25.     Also for the 2014 fiscal year, the District has failed to pay $440,680.35 that was

properly billed and owing for educational services provided to students in VisionQuest's Northeast Philadelphia program whom the District failed to, as required, timely acknowledge or disclaim as resident students of Philadelphia. For every student placed by court order into the Northeast Philadelphia VisionQuest program, VisionQuest sent to the District during the 2013-2014 school year PDE Form 4605 for the District to acknowledge that the child resided in Philadelphia and to authorize payment for the educational services provided, or to disclaim that the student was a Philadelphia resident. However, the District failed, pursuant to the requirements of 24 P.S. § 13-1308, to timely acknowledge or disclaim each student's residence, which "shall be construed as an acknowledgment of said child's residence." Id. The amounts billed and owing for services provided to such students that the District, by operation of law, admitted were resident students of the District, but for which the District has refused to compensate VisionQuest, is $440,680.35.

26.     In total, the District has failed to pay $297,626.63 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Waynesboro program; has further failed to pay $523,323.76 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Franklin program; has further failed to pay $754,501.63 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Northeast Philadelphia program, for which CCIU acted as VisionQuest's billing agent; and has further failed to pay $25,584.34 that was properly billed and owing for educational services provided to Philadelphia resident students in VisionQuest's Southern Fulton program.

27.     The total amount properly billed to the District to VisionQuest is $1,600,046.36.

28.     Despite the District's quibbling and backtracking regarding the specific amounts it

12

owes VisionQuest for regular and special education services VisionQuest has provided District resident students, the District, in fact, lacks, and has at all times lacked, any discretion to *not* promptly pay for those services.

29.    24 P.S. § 13-1308(a) provides that, where an institution such as VisionQuest seeks payment for educational services provided to students of a particular school district, "the officers of the institution shall submit to the board of school directors a sworn statement, setting forth the names, ages, and school districts liable for tuition of all children who are inmates thereof, and desire to attend public school in the district." This is the information that is set forth in PDE Form 4605, referenced above. If the school district does not thereafter timely "disclaim" all or some of the students on the list, that failure " shall be construed as an acknowledgment of said child's residence." Id.

30.    As to any students on those forms that the District did not disclaim, the District *must* pay the applicable billed charges:

> tuition of such inmates as are included in the sworn statement to the board of school directors *shall be paid by the district of residence of the inmates upon receipt of a bill from the district in which the institution is located setting forth the names, ages and tuition charges of the inmates*. The district so charged with tuition may file an appeal with the Secretary of Education, in which it shall be the complainant and the district in which the institution is located the respondent. The decision of the Secretary of Education, as to which of said parties is responsible for tuition, shall be final.

24 P.S. § 13-1308(a) (emphasis added). Pursuant to this clear language, the District's obligation to pay is mandatory – the billed charges "shall be paid by the district of residence...." To the extent that the District contests its responsibility for the charges, it may, as the statute allows, pay the charges as required and *then* "file an appeal with the Secretary of Education...."

13

31.     VisionQuest has, at all relevant times, supplied both the sworn statements and, through the host districts and, in the case of VisionQuest's Northeast Philadelphia program, through its billing agent CCIU, bills as set forth in Section 1308(a).  Thus, the mandatory language of that section commands that the District "shall" pay the billed tuition charges.  In addition, Section 13-1309(b) provides that, for all Pennsylvania students who do not have a fixed district of residence – which is not the case here – "the tuition herein provided *shall be paid by the district of residence or the institution as the case may be, within thirty (30) days of its receipt of an invoice from the district in which the institution is located*."  (Emphasis added).  Despite having provided such invoices to the District for a period of *years*, the District has not paid VisionQuest for its services, in clear violation of its mandatory obligations under Sections 1308 and 1309.

32.     VisionQuest has consistently worked with the District to address all questions to receive payment.  The District has interposed barriers to payment at every juncture, through its persistent requests for different, or differently formatted, information (most of which has been supplied on multiple occasions), and its taking of changing and inconsistent, and insupportable, legal positions regarding its obligation to pay VisionQuest for its services.  VisionQuest has consistently cooperated to the best of its ability with the District to address the District's stated concerns, while attempting to avoid instituting litigation if at all possible.

33.     However, at this juncture, the District's failure to pay VisionQuest for its services has reached a crisis point, to the extent that the District's refusal to pay is threatening the continued financial viability of VisionQuest programs in Pennsylvania.

34.     Because VisionQuest's viability in Pennsylvania is threatened by the District's failure to fulfill its mandatory statutory obligation to remit payment for VisionQuest's billed services,

14

VisionQuest seeks through this action, among other relief, limited preliminary injunctive relief ordering that the District comply with its mandatory statutory obligations to satisfy a *portion* of the tuition charges at issue, that is, the *regular* education charges provided by VisionQuest. The District has *admitted* that it is obligated to pay VisionQuest for the billed charges for regular education services, so it has no defense to payment of such charges. VisionQuest seeks this limited, interim injunctive relief ordering the District to comply with Sections 13-1308(a) and 13-1309 and satisfy an *undisputed* obligation.

**V.** **Claims Asserted**

## COUNT I - BREACH OF STATUTE

35. The allegations set forth in the preceding paragraphs are incorporated by reference herein.

36. Per the terms of applicable Pennsylvania statutes, including 24 P.S. §§ 13-1306-09, Defendant School District of Philadelphia is obligated to pay the statutorily-mandated charges for general and special education services that VisionQuest has provided to the District.

37. Despite repeated requests for payment, and the providing of requested documentation, the District has failed to pay VisionQuest the costs of the general and special education services that it has provided District resident students in VisionQuest's Waynesboro, Franklin, Southern Fulton, and Northeast Philadelphia programs.

38. The above-stated amounts are due and owing to VisionQuest by the District.

39. Pursuant to 24 P.S. § 25-2561(6), because VisionQuest administers and delivers educational services at each of the institutions set forth above, VisionQuest is entitled to receive one and one-half times the applicable charge for each student, or 150% of the charged amounts. Summit

15

School v. Commonwealth Department of Education, 108 A.2d 192 (Pa. Commw. 2015).  This statute, as the Summit School court noted, "recognizes that providing educational services to these troubled students at an institution, where a school district does not do so at its own facilities, is more costly because it requires additional services to educate these particular students, regardless of who is providing those educational services."  Accordingly, VisionQuest is entitled to be paid 150% of $1,600.046.36, or $2,400,069.54 for the educational services it provided to School District of Philadelphia resident students at its Waynesboro, Franklin, Southern Fulton, and Northeast Philadelphia facilities.

## COUNT II - SECTION 1983 CLAIM FOR
## UNCONSTITUTIONAL TAKING OF PROPERTY WITHOUT COMPENSATION

40.     The allegations set forth in the preceding paragraphs are incorporated by reference herein.

41.     Section 1983 imposes civil liability upon a local governmental entity where that entity, pursuant to official policy or custom, deprives an individual or entity of any rights, privileges, or immunities secured by the Constitution of laws of the United States.  Theodorou v. Measel, 53 Fed. Appx. 640, 642-43 (3d Cir. Nov. 25, 20012); Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005); K.S. v. School Dist. of Phila., 2007 WL 1009815 at *3 (E.D. Pa. 2007) .

42.     At all relevant times, the District, through its officials, was acting under color of state law.

43.     The Takings Clause of the Fifth Amendment of the United States Constitution guarantees just compensation whenever private property is "taken" for public use.  U.S. Const. Amend. V.

16

44.     The District is a local governmental entity.

45.     VisionQuest, during the relevant time period, had a protectable property interest that was taken by District, namely, the just value of the services that were provided to the District.

46.     The District took VisionQuest's property for a public purpose, that is, to provide required educational services for District resident students who were placed in the VisionQuest facilities at issue, almost exclusively through an order of court.

47.     VisionQuest has not been provided with just compensation for the property that was taken by the District.

48.     The taking of VisionQuest's property was pursuant to official policy, or practice of the District. The District's decision to not provide just compensation to VisionQuest for its property was made by District officials who have the ability to set official policy for the District, including the District's Chief Financial Officer and General Counsel. In addition, other high District officials were aware of the District's practice of consistently failing to pay VisionQuest just compensation for its property, and acquiesced in that policy.

49.     A plaintiff who is a prevailing party in an action brought pursuant to Section 1983 is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT III - SECTION 1983 CLAIM FOR DEPRIVATION OF PROTECTED PROPERTY RIGHTS WITHOUT DUE PROCESS OF LAW

50.     The allegations set forth in the preceding paragraphs are incorporated by reference herein.

51.     Section 1983 imposes civil liability upon a local governmental entity where that entity, pursuant to official policy or custom, deprives an individual or entity of any rights, privileges,

or immunities secured by the Constitution of laws of the United States. <u>Theodorou v. Measel</u>, 53 Fed. Appx. 640, 642-43 (3d Cir. Nov. 25, 20012); <u>Shuman v. Penn Manor School Dist.</u>, 422 F.3d 141, 146 (3d Cir. 2005); <u>K.S. v. School Dist. of Phila.</u>, 2007 WL 1009815 at *3 (E.D. Pa. 2007) .

52.     At all relevant times, the District, through its officials, was acting under color of state law.

53.     The District is a local governmental entity.

54.     VisionQuest, during the relevant time period, had a constitutionally-protected property interest of which it was deprived by the District without due process, namely, the just value of the services that were provided to the District.

55.     The deprivation of VisionQuest's property was pursuant to official policy, custom or practice of the District. The District's decision to deprive VisionQuest of its property was made by District officials who have the ability to set official policy for the District, including the District's Chief Financial Officer and General Counsel. In addition, other high District officials were aware of the District's practice of consistently failing to pay VisionQuest just compensation for its property, and acquiesced in that policy.

56.     A plaintiff who is a prevailing party in an action brought pursuant to Section 1983 is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

<u>**COUNT IV - UNJUST ENRICHMENT**</u>

57.     The allegations set forth in the preceding paragraphs are incorporated by reference herein.

58.     Defendant School District of Philadelphia has been the knowing recipient and beneficiary of general and special education services conferred on resident students of the District

18

by VisionQuest for the 2012 through 2014 fiscal years. As such, the District has received a substantial benefit from these services, and it would be inequitable for the District to retain the benefits of such services without reimbursement to VisionQuest. Defendant has been unjustly enriched at the expense of VisionQuest, and VisionQuest is therefore entitled to reimbursement for the educational services provided to resident students of the District.

59. The District has consistently been aware, through multiple communications with VisionQuest and otherwise, that VisionQuest has provided substantial and required educational services to resident students of the District since the 2012 fiscal year, and, indeed, far before that time. Although the District paid for the educational services provided by VisionQuest prior to the 2012 fiscal year, it has consistently failed to pay for such services since that time. VisionQuest has never stated that it would provide such services to the District for no charge, or less than the statutorily set rates for such services.

60. The value of the services VisionQuest provided to the District, but for which the District did not pay, is $1,600,046.33.

## COUNT V: QUANTUM MERUIT

61. The allegations set forth in the preceding paragraphs are incorporated by reference herein.

62. Defendant School District of Philadelphia has been the recipient and beneficiary of educational services provided by VisionQuest without proper compensation since the 2012 fiscal year, and it would be inequitable for the District to retain the benefits of VisionQuest's uncompensated services without reimbursement to VisionQuest.

63. The District was unjustly enriched at the expense of VisionQuest; therefore,

19

VisionQuest is entitled to reimbursement for the services provided to its resident students in quantum meruit.

64.     The value of the services VisionQuest provided to the District, but for which the District did not pay, is $1,600,046.36

## COUNT VI - INJUNCTIVE RELIEF

65.     The allegations set forth in the preceding paragraphs are incorporated by reference herein.

66.     Through this complaint, plaintiff initially seeks a limited preliminary injunction ordering that the District comply with its mandatory statutory obligations and satisfy a *portion* of the tuition charges at issues, that is, *regular* education tuition charges for regular education services provided to Philadelphia resident students.

67.     In considering a motion for preliminary injunctive relief, a court ordinarily must consider four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of such relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest. See Klitzman, Klitzman and Gallagher v. Krut, 744 F.2d 955, 958–59 (3d Cir.1984); Reynolds v. Rick's Mushroom Service, Inc., 2004 WL 620164 at *6 (E.D. Pa. March 29, 2004).

68.     "In Pennsylvania, the violation of an express statutory provision *per se* constitutes irreparable harm." Reynolds, 2004 WL 620164 at *6.  Accord Unified Sportsmen of Pennsylvania v. Pennsylvania Game Comm., 950 A.2d 1120, 1133 (Pa. Commw. 2008); Crowe v. School Dist. of Pittsburgh, 805 A.2d 691, 694-95 (Pa. Commw. 2002) (affirming lower court's granting of

injunction ordering that public school district has duty, pursuant to statute, to provide public transportation to private schools; limiting scope of injunction); Council 13, American Federation of State, County and Municipal Employees, AFL-CIO, 595 A.2d 670, 673-74 (Pa. Commw. 1991) (issuing injunction ordering Commonwealth to honor payroll obligation where failure to do so violated express statutory provision).

69.     VisionQuest has a clear probable success on the merits of this limited claim for injunctive relief.  The District has no viable defense to not paying VisionQuest for the regular education services that it provided to District resident students years at issue.  Pursuant to 24 P.S. §§ 13-1306-1309, the District has had a clear statutory duty to pay VisionQuest invoiced regular education tuition charges to resident students of the District since shortly after the District was provided invoices for such services.  Indeed, the District's General Counsel Michael A. Davis, Esquire has *admitted* that the District is liable to pay at least such regular education charges, so the District's obligation is undisputed.

70.     If the injunction is not granted, VisionQuest will also be irreparably harmed because the significant and longstanding failure by the District to pay VisionQuest pursuant to mandatory statutes will cause VisionQuest to lay off more personnel, and close or curtail more programs in Pennsylvania, to the great detriment to both VisionQuest and the students it serves.  Id.   See also Connors v. Shannopin Mining Co., 675 F. Supp. 986, 988-89 (W.D. Pa. 1987) ("very significant lapse in payments" to union trust funds constitutes an irreparable harm to trust); South Eastern Pennsylvania Transp. Authority v. International Ass'n of Machinists & Aerospace Workers, 708 F. Supp. 659, 663 (E.D. Pa. 1989) (granting injunction against union SEPTA employees from honoring secondary picket lines where, if injunction were not granted, "SEPTA would suffer irreparable harm

in the loss of both long and short term ridership and revenues").

71.     Granting the injunction will not result in greater harm to the District.  VisionQuest seeks limited injunctive relief.  The District has sufficient financial resources to comply with its mandatory statutory obligations to the limited extent sought by this injunction.

72.     Granting the injunction would be in the public interest.  VisionQuest provides educational services, both regular education and special education, to a great many at-risk students in the Commonwealth of Pennsylvania.  If The District is not ordered to comply with its statutory obligations, and VisionQuest is thereby forced to curtail or close further programs, such students, many of them District residents, would be deprived of those educational benefits through no fault of their own.

## VI.  **Relief Requested**

WHEREFORE, it is respectfully requested that the School District of Philadelphia be ordered to remit payment to VisionQuest for services provided to resident students of the School District of Philadelphia for the 2012 through 2014 fiscal years in the amount of $2,400,069.54, together with costs of suit, reasonable attorneys' fees, delay damages, interest, and injunctive and such other relief as this Court should find just and proper.

Respectfully submitted,

Dennis C. McAndrews, Esquire
ID No. 28012

Michael Gehring, Esquire
ID No. 57224

McANDREWS LAW OFFICES, P.C.
30 Cassatt Avenue
Berwyn, Pennsylvania 19312
Tele: 610-648-9300

Attorneys for Plaintiff

23